UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN PORTILLA,
on behalf of himself, individually, and
on behalf of all others similarly-situated,

                           Plaintiffs,             **MEMORANDUM &**
                                             **ORDER**
           -against-                     CV 17-2549 (JMA)(AYS)

BRIDGEHAMPTON STONE, INC.; and
BRIDGEHAMPTON STONE & BRICK, INC., and
DANIEL MESSINA, an individual, and
CESAR VILLANSACA, an individual,

                           Defendants.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

      Plaintiff, John Portilla ("Plaintiff" or "Portilla") commenced this action, on behalf of

himself and others similarly situated, pursuant to the overtime provisions of the Fair Labor

Standards Acts ("FLSA"), 29 U.S.C. § 207(a), the overtime provisions of the New York Labor

Law ("NYLL") § 160 and N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2, the

NYLL's requirement that employers furnish employees with a wage notice at the time of hiring

containing specific categories of accurate information pursuant to NYLL § 195(1), the NYLL's

requirement that employers provide on each payday proper wage statements to their employees

containing specific categories of accurate information pursuant to NYLL § 195(3), and any other

claims that can be inferred. Named as defendants ("Defendants") are corporate defendant

Bridgehampton Stone & Brick, Inc. ("BSBI") and individual Cesar Villansaca ("Villansaca").[1]

---

1. On October 9, 2018, two original defendants Bridgehampton Stone, Inc. and Daniel Messina
were dismissed with prejudice from this action. See Docket Entry [43]. Therefore, this order
pertains to defendants BSBI and Villansaca only.

Presently before the court is Plaintiff's motion to have this matter proceed conditionally as a collective pursuant to 29 U.S.C. § 216(b).[2] In the event that this Court approves of the conditional collective, Plaintiff seeks approval of a form of notice, and reminders, in English, Spanish, and any other language identified by Defendants advising members of the collective of their right to opt-in to this action, via regular mail, text message, and e-mail, and permitting a sixty day opt-in period. Plaintiff seeks permission to have a certified translation made of the original notice, reminder notice, text message, and email to be sent to each putative opt-in member in Spanish and any other language identified by Defendants as the primary language of any putative opt-in. Plaintiff seeks an order requiring BSBI and Villansaca to post the original notice at each location where the potential collective action members routinely report, in a location that is visible to all of the potential collective action members, and provide an affidavit attesting to their compliance and swearing that the notice will remain posted during the entire opt-in period. Plaintiff seeks an order requiring Defendants, within fourteen days of this order, to produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known e-mail addresses, work locations, dates of employment, and primary languages spoken of all potential collective action members who worked for Defendants at any point from July 26, 2016 to present. Defendant opposes the motion for conditional certification but does not oppose the Plaintiff's request for notices, reminders, and computer readable file or Plaintiff's request for such notices and reminders to be in English, Spanish and any other language identified by Defendants as the primary language of any putative opt-in.

---

2. Plaintiff also asserts claims for unpaid overtime pursuant to New York law that are not before the Court in the instant motion.

For the reasons set forth below, Plaintiff's motion to proceed as a conditional collective is granted. The collective shall consist of current and former employees of Defendants who, as of July 26, 2016, performed any work for Defendants as non-managerial construction laborers who give consent to file a claim to recover damages for overtime compensation that is legally due to them for time worked in excess of forty hours per week. The opt-in period is set for sixty days after the first notice is disseminated. Original notices and reminders shall be disseminated with Court-approved forms in Exhibits 4, 5, 6 and 7 of Docket Entry No. 38. Such notices and reminders must be disseminated in English, Spanish, and any other language identified by Defendants. This Court grants permission to have a certified translation made of the original notice, reminder notice, text message, and email. In addition, notice shall be posted at each location where the potential collective action members routinely report in a location that is visible to all of the potential collective action members, and provide an affidavit attesting to their compliance and swearing that the notice will remain posted during the entire opt-in period. Finally, Defendants, within fourteen days of this order, must produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known e-mail addresses, work locations, dates of employment, and primary languages spoken of all potential collective action members who worked for BSBI and Villansaca at any point from July 26, 2016 to present.

## BACKGROUND

I.    Facts Considered in the Context of this Motion

The facts summarized below are drawn from the submissions of the parties as described below. Based on Bridgehampton Stone, Inc.'s and Messina's dismissal from this matter, the instant motion is against defendants BSBI and Villansaca only. Plaintiff relies on the allegations

3

set forth in his Complaint, ("Compl.") see Docket Entry ("DE") [1], as well as declarations. As to factual declarations, Plaintiff submits his own factual declaration ("Portilla Decl."), DE [39], and his attorney's declaration ("Nguyen Decl."). DE [38]. In response, BSBI and Villansaca submit an unsigned factual declaration by BSBI's owner ("Ucho Decl."). DE [41-1].[3] Despite attempts to stipulate to conditional certification, Plaintiff has been unsuccessful. See Nguyen Decl. ¶ 10.

II.     The Parties and the Factual Allegations of the Complaint

        Defendants provide construction services in New York City and on Long Island. Compl. ¶¶ 2, 35, 36. Portilla worked for Defendants, including dismissed defendants Messina and Bridgehampton Stone, Inc., as a construction laborer from on or about September 2011 to February 16, 2017. Compl. ¶ 2. On or about July 26, 2016, Messina sold Bridgehampton Stone, Inc. to Villansaca, who reincorporated the business as BSBI, and BSBI assumed liability for all of Bridgehampton Stone, Inc.'s debts, legal obligations and claims against Bridgehampton Stone, Inc. Compl. ¶¶ 33, 34. BSBI continued to employ Portilla and other persons employed as construction laborers by Bridgehampton Stone, Inc. at the time of the sale, and BSBI continued to provide construction services to customers in New York City and on Long Island. Compl. ¶ 35. Therefore, as a result of the sale, BSBI employed Portilla as a construction laborer from on or

---

3. Defendants submitted an unsigned declaration with two separate names for the declarant. See Ucho. Decl. The defendants titled the declaration "Declaration of Jen Ucho" and the declarant's unsigned signature line indicates that "Jen Ucho" should have signed it. See id. However, presumably referring to the same declarant, "Jen Urcho" declared "under penalty of perjury" to the information presented in the declaration. See id. ("I, JEN URCHO, declare under penalty of perjury . . . ."). In light of the contradictory names used in the declaration, the Court has decided to refer to the declarant as "Jen Ucho" and refer to this declaration as "Ucho Decl."

about July 26, 2016 to February 16, 2017. See Compl. ¶ 33, 37. Villansaca was the principal

shareholder and day-to-day overseer of BSBI. Compl. ¶¶ 13, 32, 36.

Throughout his employment with Defendants, Portilla's duties mainly consisted of

"preparing and degrading sites of masonry work, laying cement, setting and mortaring bricks,

stones, and similar materials, carrying materials and tools, and keeping the work area clean."

Compl. ¶ 37. These duties were typically performed at different job sites in New York City and

on Long Island. Compl. ¶ 37. Throughout the entirety of his employment with Defendants,

Portilla worked from 6:30 a.m. to 5:30 p.m., five days per week, with a thirty-minute lunch break

each day, for a total of fifty-two and one-half hours per week. Compl. ¶¶ 2, 38. As reflected on

his paystubs, Defendants paid Portilla an hourly rate of $17.00 for only the first forty hours that

Plaintiff worked each week. Compl. ¶ 39. Defendants paid Portilla on a weekly basis, but, as

Portilla alleges, Defendants did not pay him at any rate of pay, let alone his overtime rate of pay

of $25.50 per hour for hours worked in excess of forty per week. Compl. ¶¶ 40-42.[4] Portilla

claims that all of Defendants' non-managerial construction laborer employees were paid and

treated in the same manner. Compl. ¶¶ 4, 15, 16, 45.

III.   Claims Alleged in the Complaint and the Proposed Collective

Portilla's first claim in the Complaint alleges overtime wage violations of the FLSA, 29

U.S.C. § 207(a). Compl. ¶ 50. Relating to this claim, Portilla seeks compensatory damages for

---

4. On each occasion when Defendants paid him, Portilla also alleges that the paystubs did not
provide him with a wage statement that accurately reflected "the amount of hours that he worked
each week, or his overtime rates of pay for each hour that he worked in excess of forty in a given
workweek." Compl. ¶ 43. He also alleges that Defendants did not furnish a wage notice to him at
the time of his hiring. Compl. ¶ 44. These issues are not part of the instant motion for conditional
certification of the collective action.

himself and those who opt-in to the collective, as well as liquidated damages and attorneys' fees. Compl. ¶¶ 54-55.

Portilla's second claim in the Complaint alleges overtime wage violations of NYLL § 160 and 12 NYCCRR § 142-2.2. Compl. ¶ 57. Relating to this claim, Portilla seeks compensatory damages for himself and those who opt-in to the collective, as well as liquidated damages, interest, and attorneys' fees. Compl. ¶¶ 60-61.

Portilla's third claim in the Complaint alleges violations of NYLL § 195(1) regarding required wage notices to employees at the time of hiring. Compl. ¶ 63. Relating to this claim, pursuant to NYLL § 198(1-b), Portilla seeks $50 for each work week after the violation occurred prior to February 27, 2015, up to the statutory cap of $2,500, for himself and those who opt-in to the collective. Compl. ¶ 66. For violations of NYLL § 195, pursuant to NYLL § 198(1-b), Portilla seeks $50 for each work week after the violation occurred prior to February 27, 2015, up to the statutory cap of $5,000, for himself and those who opt-in to the collective. Compl. ¶ 67.

Portilla's fourth claim in the Complaint alleges violations of NYLL § 195(3) regarding employers furnishing employees with wage statements when the employer pays wages to the employee. Compl. ¶ 69. Relating to this claim, pursuant to NYLL § 198(1-d), Portilla seeks $100 for each work week after the violation occurred prior to February 27, 2015, up to the statutory cap of $2,500, for himself and those who opt-in to the collective. Compl. ¶ 72. For violations of NYLL § 195, pursuant to NYLL § 198(1-d), Portilla seeks $250 for each work week after the violation occurred prior to February 27, 2015, up to the statutory cap of $5,000, for himself and those who opt-in to the collective. Compl. ¶ 73.

Portilla seeks to pursue this matter as an FLSA collective action that includes "[c]urrent and former employees of Defendants who, during the applicable FLSA limitations period,

performed any work for Defendants as non-managerial construction laborers who give consent to file a claim to recover damages for overtime compensation that is legally due to them for time worked in excess of forty hours per week." Compl. ¶ 15. Members of the proposed collective are alleged to have performed similar tasks, were subject to same laws and regulations, were paid in the same or similar manner, were required to work in excess of forty hours each work week, and were not paid the required rate of one and one-half times their respective regular pay rates for hours worked in excess of forty hours in a work week. Compl. ¶ 16. Defendants' conduct with respect to the improper payment of wages is alleged to be willful. Compl. ¶ 17.[5]

IV.    <u>Plaintiff's Motion and Supporting Documentation</u>

As noted, Plaintiff seeks conditional certification of this matter as an FLSA collective, and to authorize distribution of notice, by various means, to potentially affected individuals. As indicated in Plaintiff's motion, conditional certification is sought against Defendants (not the dismissed defendants) from July 26, 2016 to February 18, 2017. Plaintiff John Portilla's Memorandum of Law in Support of his Motion for Conditional Certification, Leave to Distribute Notice, and Disclosure of Contact Information Pursuant to 29 U.S.C. § 216(b) ("Pl. Mem.") DE [37] at 2 n.1. In support of the motion, Plaintiff submits, as noted, his declaration and the Nguyen Declaration.

Throughout Portilla's employment with Defendants, they assigned him to work at various jobs sites in New York City and on Long Island. Portilla Decl. ¶ 6. To complete the work at these job sites, Portilla typically worked with a crew of approximately five other

---

5. Plaintiff also seeks to maintain this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3). Compl. ¶ 18. The instant motion does not deal with certifying the class action.

construction laborers, although the specific members of the crew varied because of a high turnover rate. Portilla Decl. ¶ 6. However, during a typical month, there were at least four different crews working on between four and seven different job sites. Portilla Decl. ¶ 6. Defendants required Portilla and the other construction laborers to report to Defendants' construction yard in East Speonk, New York ("the Yard") so that Portilla and other construction laborers would be divided into groups, be given work assignments, and be sent to the job sites for that day based on Defendants' instructions. Portilla Decl. ¶ 7.

Starting at least on or around July 26, 2016 until on or around October 2016, BSBI and Villansaca required Portilla and other construction laborers to work five days per week, starting the workday in the Yard at about 6:15 a.m. and ending around 6:30 p.m., including an uninterrupted thirty-minute lunch break each day, totaling approximately fifty-eight hours and forty-five minutes each work week. Portilla Decl. ¶ 8. Starting on or around November 2016 until on or around February 18, 2017, BSBI and Villansaca required Portilla and other construction laborers to work five days per week, starting the workday in the Yard at about 6:30 a.m. and ending around 5:30 p.m., including an uninterrupted thirty-minute lunch break each day, totaling approximately fifty-two hours and thirty minutes each work week. Portilla Decl. ¶ 9.

Throughout his employment, Defendants paid Portilla straight-time for all hours worked, including all hours worked in a given week over forty hours. Portilla Decl. ¶ 10. Defendants paid Portilla "on the books" by check at a straight-time rate for the first forty hours that he worked per week and paid him "off the books" in cash at a straight-time rate for any hours worked over the first forty hours per week. Portilla Decl. ¶ 10. Consequently, Portilla alleges

that Defendants did not pay him at the overtime rate of the one and one-half times his straight rate for all hours worked in excess of the forty per work week. Portilla Decl. ¶ 10.

Portilla describes that Defendants paid all of their construction laborers the same way that they paid Portilla.[6] Portilla Decl. ¶ 11. He is aware of such a common payment scheme among the other construction workers because he and the other construction workers were required to pick up their checks and cash each week at the Yard. Portilla Decl. ¶¶ 12, 15. He witnessed management personnel distributing the checks and the straight-rate "off the books" cash to him and the other construction workers. Portilla Decl. ¶ 12.

Portilla declares he performed similar duties to the other construction workers, and, based on his experience working with the other construction workers and being assigned to similar job sites at the Yard, he personally observed the others performing the same or similar tasks as he did and working approximately the same hours per week. Portilla Decl. ¶ 13. Portilla explains that had several discussions with the other construction workers regarding Defendants' failure to pay them for all hours worked in excess of forty hours at the proper overtime rate of one and one-half times the straight rate of pay. Portilla Decl. ¶ 15. He recalls at least eight other construction laborers by name who worked for Defendants under the same conditions. Portilla Decl. ¶ 14. Portilla observed that some of these individuals spoke Spanish as their primary language. Portilla Decl. ¶ 16. He also alleges that other workers communicated regularly with BSBI employees and Villansaca through their cellular phones, often via text messages, to, among other things, "confirm that there was work when it was raining, obtain job assignments,

_____

6. Portilla also alleges that Defendants did not provide him or the other construction workers with accurate wage statements because the wage statements did not include all hours worked each work week and did not reflect the cash payments that Portilla and the other construction workers received. Portilla Decl. ¶ 11.

consult about problems that would arise on the job sites, and confirm addresses for job sites. Portilla Decl. ¶ 17.

Portilla argues that he has satisfied the standard for conditional certification and sending notice to potential collective action members. Pl. Mem. DE [37] at 8. He argues that he made his "modest factual showing" to meet his "very low" burden based on his supporting declaration recalling working with up to eight other construction laborers at any given time, even providing the names of the other construction laborers, combined with his discussions with the others about not being paid for overtime or being provided with accurate wage statements. Pl. Mem. at 11-12.

Portilla also asks this Court to allow him to send notice to the potential opt-in plaintiffs employed by the Defendants as of July 26, 2016, the date of Defendants' take over. Pl. Mem. at 14; DE [38-4]. Portilla also asks that this Court order Defendants to produce, within fourteen days of this Order, "a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known e-mail addresses, work locations, dates of employment, and primary languages spoken of all potential collective action members who worked for BSBI and Villansaca at any point from July 26, 2016 to present." Pl. Mem. at 16. Portilla also asks this Court to "allow him to send reminder notices to potential opt-in plaintiffs thirty days after the original mailing of notice and opt-in forms in order to remind any potential collective members who have not yet opted into the case of the impending deadline for their response, which would be sixty-days after sending the original notice." Id. at 17; DE [38-5]. Portilla asks to send the original and reminder notice via text message and e-mail on the grounds that potential plaintiffs may have changed residences since their employment with the Defendants ended. Pl. Mem. at 18; DE [38-6], [38-7]. Portilla requests that all notices be

distributed in English, Spanish, and any other language identified by Defendants. Pl. Mem. at 20. Portilla asks that this Court order Defendants post the Notice and consent forms, in English, Spanish, and any other primary language that Defendants identify, at each location where Defendants' construction laborers routinely report, in a place that is visible to all of the potential collective action members. Id. at 21. Finally, Portilla asks that this Court approve its changes to the Notice Form as it is necessary. Id. at 22.

V.      Defendants' Opposition

Jen Ucho, who is not a defendant in this case, is the legal owner of BSBI and familiar with the facts of this case. Ucho Decl. ¶ 1. Although she owns BSBI, she did not determine employees' wages or hours and had no control over its operations. Ucho Decl. ¶ 2. At a meeting on or about July 26, 2016, Messina, one of the dismissed defendants from this case, informed all of his employees that he was closing Bridgehampton Stone, Inc. and that "there would be a new corporation and that the employees should try to get employment if they can from the new company." Ucho Decl. ¶ 3. Ucho declares that "Portilla never worked more than 40 hours a week when he worked at [BSBI]." Ucho Decl. ¶ 8.

Defendants argue that "even though this Court previously held that this action could not go forward against the Bridgehampton Stone, Inc. and Daniel Messina . . . , Defendants still base their motion for conditional certification on Defendants who are currently no longer part of this lawsuit." Defendants' Undated Letter in Opposition of Motion for Conditional Certification ("Def. Letter") DE [41] (concluding "[t]hus the only time period in question is from July 26, 2016 through February 18, 2017"). Defendants also argue that the two entities, Bridgehampton Stone, Inc. and BSBI, should not be treated as one company because they were two separate entities. Id. (arguing the Plaintiff's failure to demonstrate successor liability and that a factual

inquiry is necessary because the two separate companies employed Portilla during the relevant time period). Defendants argue that Portilla fails to provide any proof, other than his declaration, as to his work schedule and fails to provide any proof as to the rate of pay. Id. Furthermore, Defendants argue that the "Plaintiff fails to describe in sufficient detail as to how other individuals purportedly were not paid the correct amount of overtime." Id. (stating that "Plaintiff simply lists other employees and then claims they were not paid the correct amount of overtime").

DISCUSSION

I.      Conditional Collective Action Certification: Legal Principles

The FLSA imposes liability upon employers that violate the statute's minimum wage and overtime compensation provisions. See 29 U.S.C. §§ 206-207. Section 216(b) of that statute provides an employee with a private right of action to recover overtime compensation and/or minimum wages "for and in behalf of himself or themselves and other employees similarly situated." Id. § 216(b). Such similarly situated employees may become parties to an FLSA action upon giving consent in writing to become parties. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Under the FLSA, an action seeking unpaid overtime and/or liquidated damages must be commenced within two years, or where the action arises out of a willful violation of the statute, as Plaintiff alleges in the instant case, within three years. 29 U.S.C. § 255(a).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective. Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). First, the court makes "an initial determination to send notice to potential opt-in

plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555; Mendoza v. Little Luke, Inc., No. 14-cv-3416, 2015 WL 5918580, at *3 (E.D.N.Y. Oct. 9, 2015); Gathmann-Landini v. Lululemon USA, Inc., No. 15-cv-6867, 2018 WL 3848922, at *4 (E.D.N.Y. Aug. 13, 2018). If the court decides that the Plaintiff has met its burden, then it can authorize that appropriate notice is sent, and members of the collective may thereafter opt-in to the collective action by consenting in writing to be bound by the result of the suit. Gathmann-Landini, 2018 WL 3848922, at *4; 29 U.S.C. § 216(b). Courts, at this first stage, do not resolve factual disputes, decide substantive issues going to the ultimate merits of the case, or make credibility determinations. Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 369-70 (S.D.N.Y. 2014); Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

At the second stage, the district court will, after further discovery, "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice. Id.

The instant motion concerns only the first step, also referred to as the notice stage, whereby this Court must decide whether the putative collective members are similarly situated such that conditional certification should be granted. See Lynch, 491 F. Supp. 2d at 368. To meet its burden, Plaintiff must "make a 'modest factual showing' that [it] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); Lynch, 491 F. Supp. 2d at 368 (explaining that plaintiff's burden is "very low" at this notice

13

stage); Sexton v. Franklin First Fin., Ltd., No. 08-cv-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) ("In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." (quoting Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005))). As the Second Circuit elaborated, "[t]he modest factual showing cannot be satisfied by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." Myers, 624 F.3d at 555 (citation omitted). Heightened scrutiny at this step would unduly impose on the Plaintiff the burden of proving that potential unknown plaintiffs are similarly situated, directly conflicting with the purpose of this step to collect all putative collective members even if those members are unknown. See Lynch, 491 F. Supp. 2d at 368; Gortat v. Capala Bros., Inc., No. 07-cv-3629 (ILG), 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010).

At this stage, the evidentiary standard is lenient. Valerio v. RNC Industries, LLC, 314 F.R.D. 61, 65-66 (E.D.N.Y. 2016) ("At the initial certification stage, courts do not require proof of an actual FLSA violation, 'but rather that a "factual nexus" exists between the plaintiff's situation and the situation of other potential plaintiffs.'" (quoting Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007))); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008); Castillo v. Perfume Worldwide Inc., No. 17-cv-2972, 2018 WL 1581975, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting Bifulco v. Mortg. Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).  This determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiff or plaintiffs. Valerio, 314 F.R.D. at 65 (quoting Fa Ting Wang v. Empire State Auto Corp., No. 14-cv-1491 (WFK) (VMS), 2015 WL 4603117, at *6 (E.D.N.Y. July 29, 2015)). Courts in this Circuit have granted

conditional certification motions based on the complaint or the complaint and the plaintiff's affidavit alone. See, e.g., Miranda v. Gen. Auto Body Works, Inc., No. 17-cv-04116 (AMD) (RER), 2017 WL 4712218, at *1 (E.D.N.Y. Oct. 18, 2017) ("The assertions of the named plaintiff may be enough to meet this minimal burden."); Fernandez v. Sharp Mgmt. Corp., No. 16-cv-0551 (JGK) (SN), 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) ("[I]t is not the number of affidavits which is at issue; a single affidavit providing some basis for an inference that a company-wide policy exists could be sufficient to grant conditional certification."); Sultonmurodov v. Mesivta of Long Beach, No. 15-cv-1654 (LDW) (AYS), 2015 WL 9273948, at *2 (E.D.N.Y. Dec. 17, 2015) (recognizing that the burden at the notice stage is so low that plaintiff's lone affidavit setting forth a common payment scheme may suffice).

Notably, courts determine the issue of "similarly situated" based on whether the plaintiff and the putative collective members are similarly paid with regard to pay structure, such as whether the plaintiff and the putative collective members are tipped employees, and not necessarily whether plaintiff and the putative collective members share similar job responsibilities. See e.g., Ritz v. Mike Rory Corp., No. 12-cv-367 (JBW) (RML), 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limiting conditional class to bartenders and instead, including all tipped service workers in conditional class); Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012) (refusing to limit certification to positions held by named plaintiffs); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (rejecting as frivolous defendant's argument that certification should be limited to duck feeders); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) (certifying employees despite varying positions and functions).

II.     The Motion for Conditional Certification is Granted

A.    Date Back Period to July 26, 2016

Portilla requests that this Court allow him to send notice to the potential opt-in plaintiffs employed by Defendants as of July 26, 2016, the date of BSBI's inception. Pl. Mem. DE 37 at 14; see also DE [38-4], [38-6], [38-7]. Defendants oppose the motion on the ground that "even though this Court previously held that this action could not go forward against the Bridgehampton Stone, Inc. and Daniel Messina . . . , Defendants still base their motion for conditional certification on Defendants who are currently no longer part of this lawsuit."[7] Def. Letter DE [41] at 1. However, Defendants clearly did not read or understand Plaintiff's motion, which states "Plaintiff is only seeking the relief requested herein as against the BSBI [and Villansaca]. Nguyen Decl. ¶ 9." Pl. Mem. DE [37] at 2 n.1; see id. at 14. Therefore, because Plaintiff limited the requested notice period to date back to July 26, 2016, the date on which BSBI was created, this Court need not address Defendants' arguments regarding Plaintiff's motion against dismissed defendants or successor liability; Plaintiff unequivocally limited its request to BSBI and Villansaca only.[8] Accordingly, Plaintiff's request for a date back period to July 26, 2016 is, in essence, unopposed because both parties agree that the date back period should begin as of July 26, 2016.

B.    Non-Managerial Construction Laborers Collective

Portilla seeks to pursue this matter as an FLSA collective action that includes "[c]urrent and former employees of Defendants who, during the applicable FLSA limitations period,

---

7. Presumably, Defendants meant Plaintiff "still base[s] [its] motion for conditional certification on Defendants who are currently no longer part of this lawsuit."
8. Defendants stated "the only time period in question is from July 26, 2016 through February 18, 2017." Def. Letter DE [41] at 1. Defendant ignores that Plaintiff specifically moved this Court for this time period only. See Pl. Mem. DE [37] at 2 n.1, 14.

performed any work for Defendants as non-managerial construction laborers who give consent to file a claim to recover damages for overtime compensation that is legally due to them for time worked in excess of forty hours per week." Compl. ¶ 15. Defendant opposes the motion on the ground that Portilla "fails to plead with the requisite specificity for conditional certification." Def. Letter. DE [41] at 2 (citing Boutros v. JTC Panting & Decorating Corp., No. 12 Civ. 7576 (PAE), 2013 WL 3110943, at *3 (S.D.N.Y. June 19, 2013)). Defendants' argument, relying on Boutros, is unpersuasive.

In Boutros, the plaintiffs, without any reference to any particular week, made general and conclusory statements in their amended complaint, such as "that they 'regularly' worked in excess of 40 hours per week but were paid only straight time wages for that work." Boutros, 2013 WL 3110943, at *3. In addition, the plaintiffs' declarations provided no further detail, even after reviewing defendant's payroll records, and cursorily summarized that the payroll records "consistently and extensively understate[d] how many hours plaintiffs worked." Id. (internal quotation marks omitted). The court concluded that the plaintiffs' pleadings lacked sufficient particularity to state a plausible FLSA claim. Id. (citing Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013)).

In the instant case, Portilla alleges, with specificity, two different date ranges in which he worked in excess of forty hours per work week, and for each date range, he enumerates specific hours he and others worked in excess of forty hours per week. Portilla Decl. ¶¶ 8-9, 12-15. Portilla's allegations are much more specific than the plaintiffs' allegations in Boutros. Therefore, Defendants' specificity argument lacks merit.

Defendants also oppose the motion because, as they argue, "a factual inquiry is necessary due to the fact that two separate companies employed the Plaintiff during the

relevant time period." Def. Letter DE [41] at 2. As discussed in the previous section of this Order, this Court fully rejects this argument, and refers the Defendant to Plaintiff's unequivocal motion asking for relief from only BSBI and Villansaca as of July 26, 2016. Pl. Mem. DE [37] at 2 n.1, 14. Therefore, the Court need not perform Defendants' "factual inquiry" because the parties agree that the date back period should be as of July 26, 2016.

Defendants' final argument is that Portilla failed to produce sufficient evidence that other individuals in his position were also not paid overtime and that he simply claimed that the other named individuals were not paid correctly. Def. Letter DE [41] at 3. However, Portilla's declaration explains much more than just the other named individuals not being paid, as Defendant calls it, "correctly." Def. Letter DE [41] at 3. Portilla explains that him and the others were paid "similarly," which is the standard provided in the statute. See 29 U.S.C. § 216(b); see also Calderon, 892 F. Supp. 2d at 464. Portilla and the other putative collective members would congregate at the Yard to collect their checks and cash, where he personally observed management personnel conducting this common payment scheme on several occasions. Portilla Decl. ¶¶ 12, 15. In addition, he was commonly assigned to jobs with several of these other putative collection members, allegedly working in excess of forty hours. Portilla Decl. ¶¶ 8-11. To steal the language from Myers itself, Portilla "ma[d]e a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law'" because they commonly worked required overtime together and were commonly paid in a similar manner, consisting of check and cash. Myers, 624 F.3d at 555. Whether the "off the books" cash was not paid at all or paid for straight time hours only is a factual inquiry that is left up to the next step after further discovery is

completed. See Juarez, 29 F. Supp. 3d at 369-70. It would be improper to make these inquiries during this first step. Therefore, Defendants' final argument is rejected.

This Court finds Portilla's arguments regarding the conditional certification of the collective are persuasive because he has met his very low burden of making a modest factual showing that him and the other construction laborers were similarly situated in a FLSA overtime pay violation.

C.      Computer Readable File Requests

Portilla also asks that this Court order Defendants to produce a computer-readable data file containing information of potential collective action members. Pl. Mem. at 16. Defendants have not indicated in their letter in opposition that they are opposed to any of Portilla's requests. Regarding the computer-readable data file of the potential collective action members' information, Courts have granted such requests in the past. See, e.g., Fa Ting Wang, 2015 WL 4603117, at *15 (granting the plaintiff's requests for the putative opt-ins' contact information noting that "Plaintiff's routine request for the names, mailing addresses, email addresses and telephone numbers of Defendants' drivers will assist in the provision of notice to these potential opt-in plaintiffs"); Hernandez v. Bare Burger Dio, Inc., No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *5 (S.D.N.Y. June 25, 2013) (indicating that courts often grant this kind of request for conditional certification of FLSA collective actions).

The combination of Defendants' non-opposition to the request of the data file and the request's reasonableness of information related to finding putative collective action members, this Court grants Plaintiff's request for Defendants, within fourteen days of this Order, to produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known e-mail addresses, work locations, dates

19

of employment, and primary languages spoken of all potential collective action members who worked for Defendants at any point from July 26, 2016 to present.

D.    <u>Sixty Day Opt-in Period</u>

Portilla requests that this Court "allow him to send reminder notices to the potential opt-in plaintiffs thirty days after the original mailing of notice and opt-in forms in order to remind any potential collective members who have not yet opted into the case of the impending deadline for their response, which would be a sixty-day notice period after sending the original notice." Pl. Mem. DE [37] at 17. <u>See</u> <u>Hernandez v. City of N.Y.</u>, No. 16-cv-3445 (RA), 2017 WL 2829816, at *9 (S.D.N.Y. June 29, 2017) (holding that a sixty-day period is appropriate after recognizing that "[c]ourts in the Second Circuit generally provide opt-in periods of 60 days"); <u>Yap v. Mooncake Food Inc.</u>, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) (limiting the notice period to sixty days after finding that "courts in this Circuit routinely restrict the opt-in period to 60 days"). Because the sixty day opt-in period is reasonable and furthers the purposes of conditional certification, and Defendants have not opposed the opt-in period length, this Court allows Portilla to send reminder notices to potential opt-in plaintiffs thirty days after the original mailing of notice and opt-in forms for a sixty day notice period.

E.    <u>Dissemination of Notice and Reminders via Text Message and Email</u>

Portilla requests to send the original and reminder notices via email and text message on the grounds that many potential plaintiffs may have changed residences since their employment with Defendants ended. Pl. Mem. DE [37] at 18; DE 38-6, 38-7. Practical requests with respect to disseminating notice and reminders, such as dissemination via email and text messages, further the purpose of notice of a collective action under the FLSA. <u>Cabrera v. Stephens</u>, 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) (explaining that

such notice via electronic means provides an efficient and effective means of communicating with prospective members of the putative collective, particularly when there is a high turnover rate). Because the request for dissemination is reasonable and the Defendants have not opposed such means of dissemination, this Court grants Portilla's request to send the original and reminder notices via text messages and email as documented in Exhibits 6 and 7 to Docket Entry 38. The Court allows Portilla to obtain a certified translation of the original notice, reminder, text message and email in Exhibits 4, 5, 6 and 7 of Docket Entry 38.

F.     Posting of Notice

Portilla also asks that this Court order Defendants post the Notice and consent forms, in English, Spanish, and any other primary language that Defendants identify, at each location where Defendants' construction laborers routinely report, in a place that is visible to all of the potential collective action members. Pl. Mem. at 21. Plaintiff has provided the main location where Defendants required construction laborers to report to work each morning at the Yard and Defendants' principal place of business. See Portilla Decl. ¶¶ 4, 7. Because Plaintiff's request is reasonable and furthers the purpose of conditional certification of collective actions, and Defendants not being opposed to such request, this Court grants Plaintiff's request that the original notice be posted in a conspicuous place at both of these locations in all relevant languages.

IV.    Form of Notices and Reminders

Portilla also asks this Court to allow him to send original notices, reminder notices, and original and reminder text messages and e-mails to the potential opt-in plaintiffs, distributed in English, Spanish, and any other language identified by Defendants. Pl. Mem. at 14, 17, 18, 20; see DE [38-4], [38-5], [38-6], [38-7].

21

While Portilla's notices largely comport with the Court's Notice of Pendency form, he proposes minor deviations to the form, specifically in points 8, 9 and 10, as shown in Exhibit 4 of Docket Entry 38. Id. at 22; DE [38-4]. Portilla seeks to provide further detail regarding the potential opt-ins' rights to choose an attorney, include instructions regarding the potential opt-ins' right to join the collective action regardless of their immigration status, reiterate that the notice has been authorized by this Court, and omit reference to the Defendants' counsel's contact information as to avoid confusion of providing the names of multiple counsel. Pl. Mem. at 22; DE [38-4]. Portilla also seeks approval of minor changes to the Consent to Join form to correspond with Portilla's proposed changes to point 8 of the Notice of Pendency. Id.; DE [38-4].

Portilla's changes to the standard forms are reasonable, and Defendants do not oppose such changes. See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007 (permitting courts to use their "broad discretion to craft appropriate notices," which includes "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate"); Gomez v. Terri Vegetarian LLC, No. 17-cv-213 (JMF), 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) (permitting changes to the notice to "advise recipients that their immigration status does not affect their entitlement to recover back wages or to participate in the lawsuit and that they have a right to participate in the action even if they are undocumented immigrants"); Chhab v. Darden Rests., Inc., No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege. Thus, it is appropriate that defendants'

22

counsel not be listed as contacts on the form of notice."); <u>Cabrera</u>, 2017 WL 4326511, at *8

(holding that defendant's counsel's contact information "is likely to create confusion rendering

distribution or collection of consent forms less effective"). Because the request for the changes

to the Notice of Pendency and Consent to Join forms is reasonable and the Defendants have not

opposed such changes, this Court grants use of Portilla's changes to the Notice of Pendency

and Consent to Join forms. <u>See</u> DE [38-4].

CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA

collective action pursuant to Section 216(b) is granted. The collective shall consist of current and

former employees of Defendants who, as of July 26, 2016, performed any work for Defendants

as non-managerial construction laborers who give consent to file a claim to recover damages for

overtime compensation that is legally due to them for time worked in excess of forty hours per

week. The opt-in period is set for sixty days after the first notice is disseminated. Original notices

and reminders shall be disseminated with Court-approved forms in Exhibits 4, 5, 6 and 7 of

Docket Entry 38. Such notices and reminders must be disseminated in English, Spanish, and any

other language identified by Defendants. In addition, notice shall be posted at each location

where the potential collective action members routinely report in a location that is visible to all

of the potential collective action members, and provide an affidavit attesting to their compliance

and swearing that the notice will remain posted during the entire opt-in period. Finally,

Defendants, within fourteen days of this order, must produce a computer-readable data file

containing the names, last known mailing addresses, all known home and mobile telephone

numbers, all known e-mail addresses, work locations, dates of employment, and primary

languages spoken of all potential collective action members who worked for BSBI and

Villansaca at any point from July 26, 2016 to present.


Dated: Central Islip, New York
       March 12, 2019

                                            /s/ Anne Y. Shields
                                            Anne Y. Shields
                                            United States Magistrate Judge